## UNITED STATES v. BROADMOOR HOTEL CO.

District Court, D. Colorado. January 2, 1929.

No. 7858.

Charles E. Works, Asst. U. S. Atty., of Denver, Colo.

C. C. Hamlin and J. A. Carruthers, both of Colorado Springs, Colo., for defendant.

SYMES, District Judge. From the agreed state of facts it appears that the defendant conducts the Broadmoor, a large resort hotel near Colorado Springs, Colo. On the ground floor there is a ballroom, outside terrace, main dining room, inclosed terrace, lounge, sitting room, palm court, and the usual other public rooms opening into each other, all maintained for the use and convenience of guests; that afternoon tea is served daily in the public rooms, and during the winter the hotel orchestra plays for dancing in the ballroom two afternoons a week. During the summer the music and dancing are available every afternoon during the tea period. A table d'hote charge of 75 cents is made for tea. This price prevails alike in all rooms, whether music and dancing are available or not.

These public rooms are open to all patrons of the hotel and the general public, who may occupy chairs and tables, and dance, if they so desire, without being served, and without charge of any kind. There is no entrance or cover charge. It is agreed that a large percentage of those who dance are not guests of the house, do not order tea or food, or pay for dancing.

The government alleges that the tax prescribed by section 800 (a), subdivision 6, of the Revenue Act of 1918, approved February 24, 1919, 40 Stat. 1120, and section 800 (a), subdivision 5, of the Revenue Act of 1921, 42 Stat. 289, are applicable to such a state of facts, and seek to recover from the defendant the amount of the tax and penalties alleged to be due thereunder for the years 1919 to 1924, inclusive.

A decision requires the construction of said sections, which are identical.

Section 800. (a), subdivision 6, Revenue Act of 1918: "A tax of 1½ cents for each 10

cents or fraction thereof of the amount paid for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise; the amount paid for such admission to be deemed to be 20 per centum of the amount paid for refreshment, service, and merchandise; such tax to be paid by the person paying for such refreshment, service, or merchandise."

Section 800. (a), subdivision 5, Revenue Act of 1921: "A tax of 1½ cents for each 10 cents or fraction thereof of the amount paid for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise; the amount paid for such admission to be deemed to be 20 per centum of the amount paid for refreshment, service, and merchandise; such tax to be paid by the person paying for such refreshment, service, or merchandise."

A fair construction of the language, "any public performance for profit at any roof garden, cabaret, or other similar entertainment," imports something more than the furnishing by the hotel of attractive and agreeable surroundings and music by an orchestra generally found in hotels of the type of the Broadmoor. Music has been a common accessory of hotel dining rooms and lobbies, both before and after the enactment of this statute; so, if Congress had intended to cover the situation we are considering, they would have definitely said so. Therefore, how can it be said that the defendant, in addition to running a hotel, is conducting a roof garden, cabaret, or other similar entertainment.

It is contemplated that the entertainment referred to shall be conducted for profit and admission charged. But it may be assumed from the statement of facts that 75 cents is not an excessive charge for tea; so, where is any admission charge, and where is any direct profit, found?

This section of the Revenue Act calls for something that might be termed entertainment, as distinguished from the mere service of food in the manner and with the accessories customary and expected by the patrons of a hotel of the character of the Broadmoor. Otherwise, it would logically follow that every restaurant, that maintains a radio, victrola, or other musical instrument, would come within the provisions of this section. Such

was not the intent of Congress. The term "cabaret" is clearly understood, and denotes something more in the way of entertainment than is found in this situation. No professional dancers or actors were hired by the hotel, and the music did not include soloists, either instrumental or vocal.

Government Regulation 43, explaining this section of the act, states that the entertainments included are every form of entertainment, except that furnished by orchestras, such as were used in hotels and restaurants before the advent of cabarets. This definition is agreeable with what I have attempted to state.

█ Viewing the case in the most favorable light for the government, it is doubtful, and it is not necessary to cite authorities to the proposition that taxing statutes are construed most strictly against the government.

Judgment may be entered for defendant, with costs, and exceptions allowed the plaintiff.