SCHUSTER'S WHOLESALE PRODUCE CO., Inc., et al. v. UNITED STATES.

No. 721.

District Court, W. D. Louisiana, Shreveport Division.

May 3, 1943.

A. B. Freyer, Sr., A. B. Freyer, Jr., and Wise, Randolph, Rendall & Freyer, all of Shreveport, La., for plaintiff.

M. E. Lafargue and J. A. Patin, both of Shreveport, La., for defendant.

DAWKINS, District Judge.

Plaintiff seeks a refund of an excise tax paid under protest and claimed by the Government to be due under Section 1700 of the Internal Revenue Code, as amended by Section 542(a) of the Revenue Act of 1941, 26 U.S.C.A. Int.Rev.Acts, reading as follows:

"There shall be levied, assessed, collected, and paid—

    *      *      *      *      *

"(e) Tax on Cabarets, Roof Gardens, etc.—(1) Rate.—A tax equivalent to 5 percentum of all amounts paid for admission, refreshment, service, and merchandise, at any roof garden, carbaret [cabaret], or other similar place furnishing a public performance for profit, if any payment, or part thereof, for admission, refreshment, service, or merchandise, entitles the patron to be present during any portion of such performance. No tax shall be applicable under subsection (a) (1) on account of an amount paid with respect to which tax is imposed under this subsection."

The facts are not disputed, and stated briefly, are these: The place, operated by plaintiff, known as the Pelican, is situated in Bossier Parish, across Red River, about one mile from the city of Shreveport. The bar, with stools, booths, etc., occupies the front end of the building through which all patrons enter, but immediately behind is a larger room with a dance floor in the center surrounded by chairs and tables at which the customers are served. This latter room is separated from the bar by swinging doors, and has a nickelodeon, which is played by the insertion of coins, mainly by patrons, who are at liberty to dance or not as they see fit. The same prices are charged for drinks in both rooms. There is no admission charge, as such, but on Saturday nights, a minimum of 50¢ per person is required to be spent by those served in the back room. It was explained at the trial that this is necessary to prevent, on the busiest night of the week, use of the chairs and tables by persons who would buy only a soft drink or other small items amounting to a few cents, to the exclusion of more profitable customers. A substantial part of the trade of the Pelican is the sale of "package goods", and the prices are the same, whether consumed on the premises or not.

The amount paid by plaintiff, for which the suit was brought, was $274.61, for the month of April, 1942, the first month for which the tax was levied, but the court declined to permit proof of recovery for additional months because, as to this, no demand for refund·and refusal had been made. However, a determination of the validity of the tax as to this first month will doubtless control the course of the Government with respect to others.

The question is as to whether the plaintiff furnishes to its patrons "a public performance" in which "any payment, or part thereof, for admission, refreshment, service, or merchandise, entitles the patron to be present during any portion of such performance." Of course, Congress could, by express provision define "a public performance for profit" to include dancing by

the customers and, in fact, by an amendment to Section 622 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 1700 (e) (1), it has declared that a "performance shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance" and the words "* * * 'roof garden, cabaret, or other similar place' * * *" is defined to "include any room in any hotel, restaurant, hall, * * * or any other entertainment, except instrumental or mechanical music alone, are afforded to patrons in connection with the serving or selling of food, refreshment, or merchandise."

Counsel for the Government contends that this was a legislative interpretation of the amendment of the 1941 Act, under which the present suit arises, but it seems more logical to say that the amendment was enacted to meet the decisions of the Courts in United States v. Broadmoor Hotel Co., D.C., 30 F.2d 440; and Deshler Hotel Co. v. Busey, D.C., 36 F.Supp. 392. The language of the 1941 Act is such that, by casual reading, the mind is immediately impressed with the idea that "public performance" was meant to include anything done, other than the playing of the music, whether by the members of the band, employees of the place, outsiders brought in for the purpose, or even by one of the audience, when it was for the entertainment or amusement of the patrons (as distinguished from acts such as dancing by customers for their own enjoyment), and at the instance or with the consent of the management. By the amendment of 1942, the requirement has been carried a step further to include "music and dancing privileges * * * afforded the patrons in connection" with their service, and excepts "instrumental or mechanical music alone" as a form of entertainment which will not incur the tax. There is also considerable difference in the language of 542(a) of the Revenue Act of 1941, and the amendment of 1942, § 1700(e), T. 26 U.S.C.A. Int.Rev.Code, in that the former imposed the tax "if any payment, or part thereof for admission, refreshment [etc.], entitles the patron to be present * * *"; whereas the latter imposes the tax on any of the named types of places "furnishing a public performance for profit, *by* or for any patron or guest who is entitled to be present * * *". (Emphasis by the Court.) It will be noted that the earlier provision said "if any payment, or part thereof" entitled the patron to be present, while the amendment of 1942 eliminates the requirement that some part of the payment must be for the privilege of being present, and simply says that anyone "entitled to be present", which would include anyone who entered to purchase package goods, or to be served, regardless of what he bought, or did for the "privilege" of being present.

While the case of Deshler Hotel Co. v. Busey, supra, involved § 1114(d) of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 325, the question at issue, I think, is the same, and I agree with Judge Underwood, that there were four essentials to create liability for the tax, i.e.: (1) a charge for admission or the privilege of being present; (2) a public performance; (3) the performance for profit; and (4) the performance must have been in a "roof garden, cabaret, or other similar place." As was true in that case, there is no admission charge here. In the present case, as there, anyone can enter, hear the music, see the dancing, and leave without buying anything or paying any admission, except that, on Saturday nights, when a minimum expenditure of 50¢ is required for service in the back room at the tables. Since the prices in the present case are the same, both in the bar and the dance hall, it seems clear that there is no charge made for admission in the price of goods purchased. In the Deshler case there was an orchestra, and "frequently members of the orchestra were featured as instrumental or vocal soloists as a part of the dance music. The soloists always remained on the platform and did not mingle with the patrons." [36 F.Supp. 394.] Judge Underwood, in the absence of a definition by the statute itself of the term "public performance" applied the ordinary dictionary meaning and found that under the facts of that case, there was such a performance. Here, however, as earlier stated, the music was by a nickelodeon, using phonograph records, and even under the amendment of 1942, music alone, whether mechanical or instrumental, is excepted from the definition of a public performance.

With respect to the third essential, having found that there was no public performance, it follows that there could be no profit arising therefrom; and it be-

.comes unnecessary to consider, under the fourth element, whether the place was "a roof garden, cabaret, or other similar place".

 The conclusion is that the tax did not apply to plaintiff's business as it was conducted and it is entitled to recover.