**Fred J. BILLEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 7877.**

United States District Court
W. D. Oklahoma.

April 21, 1959.

John Marshall, Oklahoma City, Okl., for plaintiff.

Dean McCormick, Sp. Asst. to Atty. Gen., and Leonard L. Ralston, Asst. U. S. Dist. Atty. for the Western Dist. of

**42**

Oklahoma, Oklahoma City, Okl., for defendant.

RIZLEY, District Judge.

*Findings of Fact.*

Taxpayer's action under the Internal Revenue laws of the United States pursuant to paragraph (1) of Section 1346 (a) of Title 28 of the United States Code as amended by Act of July 30, 1954, is to recover certain excise taxes reported and paid as cabaret taxes for the period from August, 1952, through June, 1956. Judgment is for the defendant.

This proceeding was heard on September 26, 1958, and was tried to the court. The matter was taken under advisement pending the filing of briefs by the respective parties.

Based upon the testimony presented at the time of trial and the stipulation of facts entered into by the parties, the following are found to be the essential facts for a proper determination of the issues involved:

1. The plaintiff, Fred J. Billen, called taxpayer, is the owner and operator of the Corn Crib, an establishment located in Oklahoma City. A neon sign on the building reads, "Corn Crib Dancing."

2. During the entire time the establishment has been operating, 1948 to date, an admission charge of fifty cents per person has been made; no stags are allowed.

3. Payment of the admission charge entitles the patron to the privileges of the dance floor and to the use of the booths and other accommodations without further charge regardless of how long the patron stays.

4. Practically all patrons avail themselves of the dancing privileges.

5. The establishment is open to the public from 8:30 p. m. until 4:00 a. m., six nights a week. It occupies a building 43 feet wide and 74 feet long; there are 35 booths with seating capacity for 158 patrons; tables and chairs are made available when the booths fail to accommodate all the patrons, seating approximately 40 additional persons.

6. A coin-operated machine provides the music at the expense of the patrons.

7. Hamburgers, cheeseburgers, coffee, soft drinks, potato chips, ice, and lemon could be purchased on the premises at the following prices:—hamburgers, 30 cents; cheeseburgers, 35 cents; coffee, 10 cents; soft drinks, 15 cents; potato chips, 10 cents; bucket of ice, 50 cents; and lemon, 15 cents.

8. Approximately fifty percent of the taxpayer's gross receipts was from the sale of food, set-ups, and soft drinks.

*Opinion.*

Section 1700(e) (1) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 1700(e) (1), which imposes the so-called cabaret tax, provides:

"A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place'. A performance shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance. No tax shall be applicable un-

der paragraph (1) or (3) of subsection (a) on account of an amount paid with respect to which tax is imposed under this subsection."

No further analysis of the legislative history of this statute need be made in light of Geer v. Birmingham, D.C., 88 F.Supp. 189 and Jones v. Fox, D.C.1957, 162 F.Supp. 449. Admittedly in the past there has been difficulty with this section of the Internal Revenue Code. The necessity of using words such as "dance hall" and "ballroom" and the many definitions that can be found for each, has led to some of the confusion. The Geer case resolved most of this confusion by a series of tests laid down therein to distinguish between a cabaret and a dance hall.

The plaintiff asserts that he is operating a ballroom under any or all of the tests in the Geer case distinguishing a dance hall from a cabaret. Plaintiff urges also that the factors considered in making the determination in the Geer case are also controlling in deciding whether the business then comes within the exclusion added in 1951 for ballrooms meeting the "incidental tests." This could not be the result Congress intended for then no logical meaning could be given to the sentence following the exclusion "unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret or other similar place.'"

■ Giving full meaning to each sentence of section 1700(e) (1), this Court cannot say that the phrase used therein, excluding a dance hall if its sales of merchandise are incidental to its admission fees, allows a cabaret under any other test to escape the tax imposed by merely charging an admission fee.

It seems to be sufficiently settled now that "incidental" as it appears in section 1700(e) (1) refers to the source of revenue. Jones v. Fox, supra; Geer v. Bir-

mingham, supra; In re Duffin, D.C.S.D. Cal., 141 F.Supp. 869; Kantor v. United States, D.C., 154 F.Supp. 58.

■ The tax is assessed on "all amounts paid for admissions, refreshments, service, or merchandise." The tax is therefore levied on gross receipts. Gross receipts then is the measure of revenue to be used in deciding whether a portion of operations is incidental to another. Kantor v. United States, supra. To say that the serving of merchandise was done at a loss or at a small profit, after deducting expenses, and for that reason no sales are incidental to the business as a dance hall fails to refute the argument that without the attraction of dancing there might have been no such sales, nor the argument that there may not have been any receipts for admissions without the attraction of the merchandise for sale. In this case then, who is to say which is incidental when the gross receipts were split 50% from the sale of merchandise and 50% from the admissions charged.

■ There can be no arbitrary percentage established on which to base all cases of this nature. Each must stand on its own particular circumstances. However, in this case, where 50% of the receipts are from the sale of refreshments and merchandise, the amount exceeds the definitions of "incidental" as intended by Congress.

This Court, accordingly, holds that the plaintiff's method of operation where a major portion of his source of income was from the selling of food, refreshments and merchandise subjects the receipts therefrom to a tax under the provisions of section 1700(e) (1) of the Internal Revenue Code of 1939 as amended.

Counsel for the Government will prepare journal entry of judgment in conformity with this opinion.