Lois JONES, doing business as Club Top Hat, Plaintiff,

v.

**DISTRICT DIRECTOR OF INTERNAL REVENUE, at St. Louis, Missouri, Defendant.**

No. S 63 C 24.

United States District Court
E. D. Missouri,
Southeastern Division.

March 5, 1965.

John W. Noble, Charles H. Baker, Kennett, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HARPER, Chief Judge.

The plaintiff instituted this suit, seeking in Count 1 a refund of cabaret taxes in the amount of $606.02 paid for the quarter ending March 31, 1956, pursuant to an assessment under Section 4231(6) of the Internal Revenue Code of 1954, and in Count 2 for a restraining order as to certain other cabaret taxes which had been assessed but not paid. At the time of the trial, Count 2 was dismissed by the plaintiff.

This court has jurisdiction of this action pursuant to 28 U.S.C.A. § 1340.

On April 13, 1962, an extra assessment of $5,103.08 was made against the plaintiff by the Director of Internal Revenue for unpaid cabaret excise tax liabilities for the period January 1, 1956, to December 31, 1957. The plaintiff thereafter paid $606.02, being the tax demand for the quarter ending March 31, 1956, together with penalty for said period. Plaintiff thereafter filed a claim for re-

fund of the amount paid, which claim was disallowed, and this action was brought to recover the said $606.02.

Plaintiff had filed quarterly excise tax returns for each of the quarters ending March 31, 1956, to December 31, 1957, and paid the excise taxes due on a cabaret based upon the admission charges, services, and sales of setups, soft drinks, pretzels and potato chips made in the night club known as the Club Top Hat. The extra assessment made by Internal Revenue in 1962 was for cabaret taxes on sales made in a package liquor store owned by the plaintiff. The amount of extra cabaret tax liabilities allegedly due was determined by agents of the Internal Revenue Service based upon their estimations from observation of the business conducted by the plaintiff in the package liquor store. It was their finding that 65% of all sales of liquor in said store was carried by the purchasers into the night club, so the extra assessment was figured at 20% of this 65% of total liquor sales made in the liquor store.

The cabaret excise tax which was assessed is based upon 26 U.S.C.A. § 4231 (6), as follows:

"There is hereby imposed:

"(6) *Cabarets.*—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph."

Section 4232 contains the definitions of terms used in § 4231 and provides:

"(b) *Roof garden, cabaret or other similar place.*—The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place.' "

It is under these sections that the defendant Director proceeded, and more particularly under Treasury Regulation Section 101.14 (1954) and Revenue Ruling 56–526, 1956 Internal Revenue Bulletin No. 43, p. 17. Subparagraph (c) of the Regulations provides:

"(c) Amounts paid for refreshment, service, or merchandise in a room which is entirely separate from the room in which entertainment is furnished are not subject to tax, provided that the patrons in such separate room may not witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of the entertainment except when persons pass from one room to the other."

The Revenue Ruling which defendant Director relies upon dealt with a situation where an establishment contained a dining room and a ballroom separated by a solid wall, both with separate outside entrances. Persons present in the dining room could not witness the entertainment in the ballroom, and in order to do so had to leave the dining room, pay admission and enter the ballroom by its separate outside entrance. The Internal Revenue Commissioner ruled that the test in such a situation as to

cabaret tax liability is whether there is one operation or two, that the fact of separate outside entrances is not a determining factor, and held: "The basic question to be resolved is whether the operation of the room in which food, refreshment, or merchandise is sold is so independent of the operation of the entertainment room that they can be regarded as two separate operations, or whether they are so interdependent that they must be regarded as one operation. This question must be resolved on the basis of the facts and circumstances in each case." (Page 18.)

There has been extensive litigation over the applicable cabaret tax provisions. Most of the litigation has dealt with situations involving the time at which amounts spent at a place of business became subject to the cabaret tax, but the cases do help to show attitudes of the appellate courts in assessing this tax. See: Birmingham v. Geer, 8 Cir., 185 F.2d 82; United States v. Eddy Bros., Inc., 8 Cir., 291 F.2d 529; United States v. Hover, 9 Cir., 268 F.2d 657; Bush's, Inc. v. United States, 7 Cir., 277 F.2d 780.

The Supreme Court in Gould v. Gould, 245 U.S. 151, 1. c. 153, 38 S.Ct. 53, 62 L.Ed. 211, said:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

There are several district court cases which are closer to the problem before this court.

In McKenzie v. Maloney, D.C., 71 F. Supp. 691, the plaintiff operated one room where refreshment, service, and merchandise was sold, and another room entirely separate where entertainment and dancing were furnished. A door between the two rooms was kept closed during the entertainment. The District Court found the restaurant operation to be a separate business, and concluded, 71 F. Supp. 1. c. 693: "The assessment and collection of the cabaret tax on the separate room in the sum of $1326.70 was illegal, excessive, and erroneous, and not within the purview of the internal revenue laws of the United States."

Similarly, in Daum v. Jarecki, D.C., 123 F.Supp. 583, the plaintiffs operated a dining room and cocktail lounge which were connected by a door with a dance hall operated by their lessor. Plaintiffs were allowed a refund of the cabaret taxes collected from them by defendant because the premises of plaintiffs were not a "cabaret, roof garden or other similar place" within the meaning of the statute, and the two businesses were separate, taxable entities, despite their physical joinder.

In the case of In re Duffin, D.C., 141 F.Supp. 869, 1. c. 871, the court held that separation of the bar area and the dancing area by a lattice work that could be seen through and freely passed through did not constitute the physical division necessary to come within Regulation 101.14, and further held: "The regulation, rather, has in mind a physical separation giving a true impression of separateness."

The District Court in La Jolla Casa de Manana v. Riddell, 106 F.Supp. 132, 1. c. 135, a case which was affirmed per curiam in 9 Cir., 206 F.2d 925, said:

"It is clear that Congress envisioned an essential unity between the service of refreshment and the enjoyment of the entertainment. The reason for this unity is the reason for the tax itself: that the payment for the refreshment should operate to entitle the patron to view the entertainment, or participate in the dancing, as the case may be."

The court in Carroll v. United States, D.C., 213 F.Supp. 847, 1. c. 852, referred to the La Jolla case, supra, and said:

"Unity between the service of refreshments and the enjoyment of entertainment serves as the judicial touchstone in determining the validity of cabaret tax assessments. (Citing cases.) Each case must be determined on its own facts. (Citing cases.)"

The regulations issued with respect to this tax indicate that each case must be determined on its own facts, as held in Carroll, supra.

■ Turning to the facts in the instant case with respect to the operation involved, the testimony discloses that during the period in question the plaintiff operated two businesses in Kennett, Missouri, both of which were located in one building until July 31, 1957. The Club Top Hat consisted of a night club and occupied the main part of the building. In the same building, in a room completely separate from the club, was a business operated as the Jones Package Store, which sold, among other things, package liquor. The two businesses were separated by a solid wall and it was not possible to see from one into the other. Each business had its own outside entrance. In the night club a juke box was available for the use of the customers, and dancing was permitted. Occasionally a band performed, and on these occasions an admission fee was charged to all who entered.

On July 31, 1957, a fire occurred in the Jones Package Store, and it was then moved to another building, approximately forty feet from the old location, which was not physically connected to the building where the club was located.

The Missouri statutes prohibit the consumption of alcoholic beverages where sold in a package store on the premises. The plaintiff had a separate license for each of the businesses, having a Missouri package liquor license for the Jones Package Store, and having a different license for the club which permitted the selling of 3.2 beer, but no other liquor of any kind. The testimony discloses that the purchasers of liquor in the package store in many instances after leaving the package store went into the club and patronized the club. The Missouri statute, Section 311.200, V.A.M.S., provides as follows:

"No license shall be issued for the sale of intoxicating liquor in the original package, not to be consumed upon the premises where sold, except to a person engaged in, and to be used in connection with the operation of one or more of the following businesses: A drug store, a cigar and tobacco store, a grocery store, a general merchandise store, a confectionery or delicatessen store, nor to any such person who does not have and keep in his store a stock of goods having a value according to invoices of at least one thousand dollars, exclusive of fixtures and intoxicating liquors. Under such license, no intoxicating liquor shall be consumed on the premises where sold nor shall any original package be opened on the premises of the vendor except as otherwise provided in this law."

It was the intent of the statute in question to tax those places of business which furnish entertainment to the public for profit in connection with the sale of food or refreshment, whether an actual admission is charged or not. In the present case, the entertainment is the music and dancing furnished in the night club, and plaintiff does not dispute the liability of that business for the cabaret tax. The dispute arose when defendant Director claimed that the package store sales were incidental to the operation of the night club and, therefore, the sales made in connection with it were likewise subject to the tax.

To so hold in favor of defendant would require an unreasonable application of Sections 4231 and 4232. No cases applying and interpreting these sections have been cited that compare to such a broad application, and none have been found. The statutes and regulation clearly establish that when sufficient unity of operation and interdependentness have been proven then the cabaret ex-

cise tax shall be assessed against both the major and the minor operations.

Here there is not adequate proof of such unity. The two businesses are distinct and separate operations; they have always been operated as such and had a physical separation; and the single fact of common ownership does not operate to necessarily require a finding of a single operation for cabaret tax purposes. Plaintiff is entitled to her refund of $606.02 in cabaret taxes assessed against the sales of her package liquor store.

The court adopts this memorandum opinion as its findings of fact and conclusions of law, and the clerk is directed to prepare and enter judgment in accordance with this opinion.